**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Justin and Marie Wood, husband and wife, | No. CV-11-2380-PHX-GMS |
| Plaintiffs, | **ORDER** |
| v. | |
| Liberty Mutual Fire Insurance Company, et al., | |
| Defendants. | |

Pending before the Court is Defendant Liberty Mutual Fire Insurance Company's motion for partial summary judgment on Plaintiff's insurance bad faith and punitive damages claims. (Doc. 21).[1] For the reasons stated below, Defendant's motion is denied.

**BACKGROUND**

On May 23, 2009, Plaintiff Justin Wood was injured in a car-motorcycle accident while in the line of duty as a City of Phoenix Police Officer. (Doc. 21 at 2). Among other injuries, Officer Wood sustained an injury to his hand, which required the grafting of skin from his thigh, and injuries to his head, suffered when his helmet was knocked off by the

---

[1] Both parties have requested oral argument. The request is denied because the parties have thoroughly discussed the law and the evidence, and oral argument will not aid the Court's decision. *See Lake at Las Vegas Investors Group, Inc. v. Pac. Malibu Dev.,* 933 F.2d 724, 729 (9th Cir. 1991).

force of the crash. (Doc. 37, ¶7). Wood was covered in part by workers' compensation insurance, as well as by an Uninsured Motorist (UM) policy with Liberty Mutual with a policy limit in the amount of $250,000. (Doc. 21 at 2–3).

Mr. Wood's combined medical bills and wage loss as a result of the accident came to a total of $86,791.31. (Doc. 37, ¶¶ 9, 10). Following investigation, Liberty Mutual made an initial claim valuation of between $121,000 and $156,034. (Doc. 22, ¶35). Offsetting for workers compensation, Liberty Mutual offered an initial settlement of $120,000 on October 4, 2010. (Doc. 21 at 3; Doc. 22, ¶36). Plaintiffs disputed the value of the claim, and filed suit claiming insurance bad faith, breach of contract and punitive damages on January 25, 2011. (Doc. 1 at 6; Doc. 21 at 4).

Defendant now moves for partial summary judgment on the bad faith and punitive damages claims.

## DISCUSSION

### I.     Legal Standard

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Substantive law determines which facts are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion," including identifying portions

of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has detailed the basis for its motion, the party opposing summary judgment "may not rest upon the mere allegations or denials of [the party's] pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(E); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Anderson*, 477 U.S. at 247–48. However, in the summary judgment context, the Court construes all disputed facts in the light most favorable to the non-moving party. *Ellison v. Robertson,* 357 F.3d 1072, 1075 (9th Cir. 2004). "A fact issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson,* 477 U.S. at 248). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## II.    Analysis

### A.    Bad Faith

Arizona has recognized a tort of first-party insurance bad faith since 1981. *Noble v. Nat'l Life Ins. Co.*, 128 Ariz. 188, 624 P.2d 866 (1981). In Arizona, an insurer's bad

faith arises when an "insurance company denies or fails to process or pay a claim without a reasonable basis for such action." *Deese v. State Farm Mut. Auto. Ins. Co.,* 172 Ariz. 504, 838 P.2d 1265, 1268 (1992).

Insurance bad faith is a question of reasonableness under the circumstances, and is not proven by mere negligence, but rather by an inquiry into "whether a claim was properly investigated and whether the results of that investigation were reasonably reviewed and evaluated." *Deese*, 838 P.2d at 1268. Bad faith may be decided on summary judgment, *see Prieto v. Paul Revere Life Ins. Co.*, 354 F.3d 1005, 1010 (9th Cir. 2004), and can be established by showing (1) the absence of a reasonable basis for denying benefits, and (2) the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim. *Deese,* 838 P.2d at 1267–68. "The first inquiry involves an objective analysis that focuses on whether the insurer acted unreasonably, while the second involves a subjective analysis as to 'whether the insurer *knew* that its conduct was unreasonable or acted with such reckless disregard that such knowledge could be imputed to it.'" *Young v. Allstate Ins. Co.*, 296 F. Supp. 2d 1111, 1115 (D. Ariz. 2003) (quoting *Deese*, 838 P.2d at 1268) (emphasis in original).

### 1.    The Objective Prong: Acting Unreasonably

"The first element is . . . based upon a simple negligence standard: did the insurance company act in a manner consistent with the way a reasonable insurer would be expected to act under the circumstances. This is the threshold test for all bad faith actions . . . . Where an insurer acts reasonably, there can be no bad faith." *Trus Joist Corp. v. Safeco Ins. Co. of Am.*, 153 Ariz. 95, 104, 735 P.2d 125, 134 (Ct. App. 1986).

1    Plaintiffs assert that Liberty Mutual acted unreasonably by: (a) failing to

2    adequately review the claim, and (b) mis- or under-valuing Plaintiffs' claim. (Doc. 36 at

3    9, 12, 13). The bulk of Plaintiffs' argument centers on a perceived failure on the part of

4    Defendants to review the additional medical information contained in the December 10,

5    2010 demand letter, and on a declaration from Plaintiffs' expert.

6

7

8                        a.      **Adequacy of Investigation**

9    Plaintiff asserts that Defendant's investigation of Mr. Wood's claim was

10   inadequate because Defendant should have completed additional medical examinations of

11   Mr. Wood, taken an injury statement, or conducted a records review. (Doc 36 at 2). Here,

12   Liberty Mutual conducted only a brief interview of the claimant, and did not get a

13   recorded or sworn statement from him regarding his injuries and the impact those injuries

14   had on the Wood family. (Doc 21 at 10; Doc. 36 at 2). Nor did Liberty Mutual obtain an

15

16   independent medical examination. (*Id.*). Rather, it relied upon the files and medical

17   information provided by Plaintiffs' counsel. (*Id.*). *See Roberts v. State Farm Mut. Auto*

18   *Ins. Co.*, 61 Fed. App'x 587 (10th Cir. 1993) (holding that a failure to conduct a more

19

20   thorough investigation when an adequate one was performed does not constitute bad

21   faith). There, an insurance company in a first-party valuation dispute made its claims

22   valuation based upon materials provided to it by claimants. *Id.* The court noted that the

23   insurance company had "repeatedly requested all relevant medical records," none of

24   which "in any way indicated a possibility of permanent impairment, osteoarthritis, or

25   future medical care." *Id.* at 591. Despite this, the claimant argued that the "investigation

26

27

28

was nonetheless inadequate because it failed to seek additional information [and medical reviews] relating to his damages." *Id.* at 591. Disagreeing, the Tenth Circuit held that "[a]lthough State Farm's investigation may have resulted in an undervaluation of Mr. Roberts' claim, it was not because State Farm's investigation was 'unreasonable under the circumstances.'" *Id. See also Prieto v. Paul Revere Life Ins. Co.*, 354 F.3d 1005, 1011 (9th Cir. 2004) (holding that insurance company's investigation which included an interview of the claimant shortly after his medical treatment and a review of claimant's medical records, "does not suggest bad faith").

Unlike the situation in *Roberts*, however, at least some of the evidence in Plaintiffs' file indicated some risk of permanent injury. Plaintiffs point to the declaration of Dr. Thull, one of Mr. Wood's treating physicians, which notes that Mr. Wood's hand injury "is probably permanent" and may impact his ability to continue working as a motorcycle police officer. (Doc. 36 at 7). Plaintiffs argue that this evidence was not taken into account by Liberty Mutual in making its decision, and that this is unreasonable and therefore bad faith. (Doc. 36 at 9). Plaintiffs' argument is bolstered primarily by the declaration of Rhett L. Muller, an expert in "automobile insurance claims handling, claims practices, and handling of UIM/UM coverage issues," who worked in the insurance industry for 25 years, 14 of which were spent "in the management of claims." (Doc 37-1 at 3).

Defendant argues that the declaration from Mr. Muller must be disregarded because it "contains only legal conclusions and unsupported factual allegations, including a wholly unsubstantiated valuation" in violation of Rule 56(c). (Doc. 55 at 2 (citing FED.

R. CIV. P. 56(c)(4))).[2] To be sure, "[a]n expert witness cannot give an opinion as to her legal conclusion." *Nationwide Transp. Fin. v. Cass Info Sys.*, 523 F.3d 1051, 1058 (9th Cir. 2008).   However, this does not mean that the portions of an expert's declaration which bear on his expertise and knowledge are to be disregarded. *See, e.g., Nemir v. Mitsubishi Motor Sales of Am., Inc.*, 6 F. App'x 266, 273 (6th Cir. 2001) (holding district court improperly refused to consider any of expert's  testimony on ground some of it did not satisfy *Daubert* test). For example, Plaintiffs' expert cites to both his review of the Demand Letter of December 10, 2010 and Liberty Mutual's claim log materials as support for his opinion regarding the adequacy of Liberty Mutual's claim investigation and evaluation. (Doc. 37-1 at 3). For summary judgment purposes, this is sufficient to create a genuine issue of material fact. See *Ambrosini v. Labarraque*, 966 F.2d 1464, 1470 (D.C. Cir. 1992) (holding that plaintiff's expert "stated a specific fact, namely that, his opinion was based on 'the available scientific and epidemiological data'" and that this was "a sufficient factual basis to defeat summary judgment").

In his role as an expert, Mr. Muller notes that in his review of materials contained in Plaintiffs' demand letter and Defendant's claim log, he did not find any indication that Liberty Mutual considered Dr. Thull's declaration regarding the permanence of Mr.

---

[2] Defendants also attack Plaintiffs' expert on evidentiary grounds. FED. R. EVID. 702. This is a new argument, not framed in Defendant's original motion, and the Court does not address it because it would be unfair to deprive Plaintiff of the opportunity to respond. *See Delgadillo v. Woodford*, 527 F.3d 919, 930 n. 4 (9th Cir. 2008) ("Arguments raised for the first time in [the] reply brief are deemed waived."); *Marlyn Nutraceuticals, Inc. v. Improvita Health Prods.*, 663 F. Supp.2d 841, 848 (D. Ariz. 2009) ("The Court need not consider Defendants' position, however, since it was first raised in their reply brief . . . . Thus, even if the argument has merit, this Court cannot appropriately consider it, since Plaintiffs did not have the opportunity to respond.").

Wood's injury. (Doc. 37-1 at 3). Liberty Mutual argues that it had already taken into account Dr. Thull's materials provided prior to the demand letter, (Doc. 55 at 11), and that these materials conflicted with Dr. Thull's prior assessment provided in August 2010 that Mr. Wood's injured hand "should gradually improve with time." (Doc. 55 at 12). Further, Defendant has produced sworn depositions of its adjuster and his supervisor in which they claim they had "allowed for permanency" in their review and valuation. (Doc. 55 at 13).

"Where the nonmoving party in a motion for summary judgment has come forward with direct evidence contrary to that offered by the movant, a credibility issue is raised." *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 507 (9th Cir.1992); *see also McLaughlin v. Liu,* 849 F.2d 1205, 1207–08 (9th Cir. 1988). Plaintiffs' expert review of the claim log appears to bear directly on what may be a central fact in dispute: whether Defendant included the possible permanency of Mr. Wood's injuries in their investigation and evaluation of the claim, and the subsequent valuation of the claim. Here, Plaintiffs' expert, by noting the absence of documentation indicating a review of the materials regarding the permanency of Mr. Wood's injuries, has created a credibility issue.

Such relevant determinations are for the trier of fact. *McLaughlin,* 849 F.2d at 1207 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986)). Therefore, a fact-finder could find that Liberty Mutual acted unreasonably in its investigation of Plaintiffs' claim.

**b.      Claim Valuation and Fair Debatability**

Defendant argues that, even if its claim investigation was inadequate, the value of the claim is "fairly debatable," and therefore not susceptible to a bad faith claim. (Doc. 55 at 13).  Defendant urges repeatedly the declaration that "a personal injury claim is . . . generally not . . . susceptible to relatively precise evaluation or calculation." *Voland v. Farmers Ins. Co. of Ariz.*, 189 Ariz. 448, 452–53, 943 P.2d 808, 812–13 (App. 1997).

"[T]he tort [of insurance bad faith] will not lie for claims which are 'fairly debatable.'" *Lasma Corp. v. Monarch Ins. Co. of Ohio*, 159 Ariz. 59, 63, 764 P.2d 1118, 1122 (1988) (citing *Noble*, 624 P.2d at 868). That a claim is fairly debatable, however, does not bar inquiry into the reasonableness of the insurer's claim investigation, evaluation and payment. *Zilisch v. State Farm Mutual Automobile Insurance Co.*, 196 Ariz. 234, 995 P.2d 276, 279–80 (2000) (en banc). Thus, "while fair debatability is a necessary condition to avoid a claim of bad faith, it is not always a sufficient condition. The appropriate inquiry is whether there is sufficient evidence from which reasonable jurors could conclude that in the investigation, evaluation, and processing of the claim, the insurer acted unreasonably and either knew or was conscious of the fact that its conduct was unreasonable." *Id.* at 280 (citing *Noble,* 624 P.2d at 868; *Deese,* 838 P.2d at 1268).

Plaintiffs have demonstrated a genuine issue of material fact with regards to the adequacy of Liberty Mutual's claim investigation and evaluation, which may in turn have impacted the insurer's valuation of the claim. "Generally, while an insurer may challenge claims which are fairly debatable, its belief in fair debatability 'is a question of fact to be

determined by the jury.'" *Young v. Allstate Ins. Co.*, 296 F. Supp. 2d 1111, 1115-16 (D. Ariz. 2003) (omitting internal citations). A reasonable jury could, given the evidence discussed above, find Defendant acted unreasonably with regards to Plaintiffs' claim valuation in addition to its handling of the claim investigation.

### 2.     The Subjective Prong: Knowledge of Unreasonableness

Unreasonableness alone is not sufficient to establish bad faith liability, nor does negligent conduct "result[ing] solely from honest mistake, oversight, or carelessness" necessarily create bad faith liability. *Trus Joist Corp.*, 735 P.2d at 134. "Some form of consciously unreasonable conduct is required. This requirement of consciously unreasonable conduct is fulfilled either by the insurer's knowledge that it is acting improperly or by reckless conduct which permits such knowledge to be imputed to it." *Id.*

Personal injury claims are highly imprecise. *Voland*, 943 P.2 at 812–13. Plaintiffs have not shown evidence that Liberty Mutual knowingly mis- or under- valued Mr. Wood's claim. To the contrary, Liberty Mutual appears to have had grounds to question some aspects of Mr. Wood's claim.

Nor have Plaintiffs provided any evidence that Defendant knowingly refused to pay the fair value of Mr. Wood's claim. Liberty Mutual's initial offer of $120,000 was within their range of their internally-evaluated claim valuation. (Doc. 22, ¶35-38). The insurer attempted to negotiate a payment with Plaintiffs' counsel within this range repeatedly. *Id.  See Newport v. USAA*, 2000 OK 59, 11 P.3d 190, 197 (2000) (holding a jury could reasonably find insurance bad faith when insurer repeatedly offered settlement below the value it had internally assigned to the claim).

However, as noted above, irregularities in its claims investigation and evaluation may have influenced Liberty Mutual's claim valuation. While Plaintiff has not provided any direct evidence that Liberty Mutual knowingly refused to pay the fair value of its claim, a jury could plausibly infer from Liberty Mutual's alleged failure to adequately review the contents of Mr. Wood's Demand Letter that the insurer either knew or was conscious of the fact that this omission was unreasonable. *Bond v. American Family Mut. Ins. Co.*, CV-06-1249-PHX-DGC, 2008 WL 477873, at \*5 (D. Ariz. Feb. 19, 2008) (holding that where insurer failure to provide third-party estimator with all relevant facts jury could infer insurer's conscious intent to "avoid[] significant payment to Plaintiffs"). *See also Bradshaw v. State Farm Mut. Auto. Ins. Co.*, 157 Ariz. 411, 422–23, 758 P.2d 1313, 1325 (1988) (holding that jury may infer insurer's intent to minimize insurer's payment through improper means from defendant's actions). "Whether the Defendant possess[es] such intent . . . [is a] question[] for the jury." *Id.* (citing *Zilisch*, 995 P.2d at 280). Plaintiff has, therefore, carried its burden and created a genuine issue of material fact with regards to both prongs of its bad faith claim.

### B.      Punitive Damages

"Punitive damages are recoverable in insurance bad faith tort actions only if the insured acted with an 'evil mind' in breaching the implied covenant of good faith and fair dealing." *Hawkins v. Allstate Ins. Co.,* 152 Ariz. 490, 733 P.2d 1073, 1080 (1987) (citing *Rawlings v. Apodaca,* 151 Ariz. 149, 726 P.2d 565, 578–79 (1986)). The "evil mind" required under Arizona law "is established by evidence that defendant either (1) "intended to injure the plaintiff ... [or (2)] consciously pursued a course of conduct

- 11 -

knowing that it created a substantial risk of significant harm to others." *Gurule v. Illinois Mut. Life & Cas. Co.*, 152 Ariz. 600, 602, 734 P.2d 85, 87 (1987) (internal citations omitted). Evidence that "defendant's wrongful conduct was motivated by spite, actual malice, or intent to defraud" will satisfy this standard, as will "[d]efendant's conscious and deliberate disregard of the interests and rights of others." *Id.* "[T]he required evil mind may be established by defendant's express statements or inferred from defendant's expressions, conduct, or objectives." *Id.*

In an insurance bad faith action, where the plaintiff has failed to sustain a bad faith claim, the punitive damages claim must also be dismissed. *Milhone v. Allstate Ins. Co.*,289 F. Supp. 2d 1089, 1104 (D. Ariz. 2003). As noted above, Defendant argues that Plaintiffs cannot sustain their burden on the bad faith claim.  On the grounds that the bad faith claim is necessary for a punitive damages claim, Defendant argues that the punitive damages claim should be dismissed here as well. (Doc. 39 at 3; Doc. 55 at 15).

However, as discussed above, Plaintiffs have created a genuine issue of material fact with regards to the bad faith claim. In addition to the bad faith claim itself, Plaintiff has made several other allegations regarding Liberty Mutual's claims processing and valuation practices. (*See, e.g.,* Doc. 35 at 4–5). Coupled with the bad faith claim, these allegations could lead a reasonable jury to infer Defendant possessed the "evil mind" required for punitive damages. Summary judgment on the punitive damages claim is, therefore, not warranted.[3]

---

[3] Plaintiff previously filed a motion for 56(d) relief on the punitive damages claim, (Doc. 33), which was mis-characterized on the docket as a motion for extension. Given

**CONCLUSION**

For the forgoing reasons, the Court finds that Plaintiffs have created a genuine issue of material fact with regards to both their bad faith and punitive damages claims. Summary judgment is therefore inappropriate.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Partial Summary Judgment (Doc. 21) is **DENIED**.

Dated this 9th day of July, 2012.

_A. Murray Snow_

/G. Murray Snow
United States District Judge

---

this order, however, Plaintiff's 56(d) motion is moot and remains dismissed as per the Order dated May 7, 2012 (Doc. 50).